JANETTE K. BRIMMER (WSB #41271)
jbrimmer@earthjustice.org
*[Pro Hac Vice Pending]*
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA  98104
(206) 343-7340 | Phone
(206) 343-1526 | Fax
*Attorneys for Plaintiff*

KARL G. ANUTA (OSB #861423)
kga@integra.net
Law Office of Karl G. Anuta, P.C.
735 S.W. First Avenue, 2nd Floor
Portland, OR  97204
(503) 827-0320 | Phone
(503) 228-6551 | Fax
*Local Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | | |
|---|---|---|
| WATERWATCH OF OREGON, PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, INSTITUTE FOR FISHERIES RESOURCES, and STEAMBOATERS, | ) ) ) ) | Case No. 3:20-cv-01927-IM |
| Plaintiffs, | ) ) ) | PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS |
| v. | ) ) | |
| WINCHESTER WATER CONTROL DISTRICT, | ) ) | **Oral Argument Requested** |
| Defendant. | ) ) ) | |

PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION TO DISMISS

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................1

STANDARD OF REVIEW ..................................................................................................5

ARGUMENT ......................................................................................................................6

I.      THE PRIMARY JURISDICTION DOCTRINE DOES NOT APPLY. .............................6

      A.     The Primary Jurisdiction Doctrine Is A Discretionary, Prudential Doctrine. ..........6

      B.     This Court Has Jurisdiction Over Claims Arising Under The Endangered Species Act And The Primary Jurisdiction Doctrine Does Not Dictate Dismissal. ................................................................................................................8

II.     THE FISH CONSERVATION GROUPS' CLAIMS ARE NOT TIME-BARRED. ........10

CONCLUSION ..................................................................................................................15

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alsea Valley Alliance v. Evans*,
    161 F. Supp. 2d 1154 (D. Or. 2001) ......................................................................13

*Center for Biological Diversity v. Hamilton*,
    453 F.3d 1331 (11th Cir. 2006) ...........................................................................13

*Coalition for a Sustainable Delta v. Fed'l Emergency Management Ass'n*,
    812 F. Supp. 2d 1089 (E.D. Cal. 2011)................................................................13

*Coho Salmon v. Pacific Lumber Co.*,
    61 F. Supp. 2d 1001 (N.D. Cal. 1999) ...................................................................8

*County of Okanogon v. Nat'l Marine Fisheries Serv.*,
    347 F.3d 1081 (9th Cir. 2003) .............................................................................9

*Institute for Wildlife Protection v. U.S. Fish and Wildlife Serv.*,
    2007 WL 4117989 (D. Or. 2007)........................................................................13

*Klamath Water Users Protection Ass'n v. Patterson*,
    204 F.3d 1206 (9th Cir. 2000) .............................................................................9

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) .............................................................................5

*Nicholson v. REI Energy, LLC*,
    370 F. Supp. 3d 1199 (D. Or. 2019) .....................................................................8

*Pacific Coast Fed'n of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*,
    138 F. Supp. 2d 1228 (N.D. Cal. 2001) ................................................................9

*Reid v. Johnson & Johnson*,
    780 F.2d 952 (9th Cir. 2015) ...............................................................................7

*Roberts v. Carrothers*,
    812 F.2d 1173 (9th Cir. 1987) .............................................................................5

*Robles v. Domino's Pizza, LLC*,
    913 F.3d 898 (9th Cir. 2019) ........................................................................6, 7, 8

*S. Utah Wilderness Alliance v. Norton*,
    301 F.3d 1217 (10th Cir. 2002) ..........................................................................13

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

*Safer Air for Everyone v. Meyer*,
   3737 F.3d 1035 (9th Cir. 2004) ..............................................................5, 6

*Sierra Club v. Portland Gen'l Elec. Co.*,
   663 F. Supp. 2d 983 (D. Or. 2009) ..............................................................13

*Wildearth Guardians v. Salazaar*,
   2009 WL 6443120 (S.D. Tex. 2009) ..............................................................13

*Wilderness Soc'y v. Norton*,
   434 F.3d 584 (D.C. Cir. 2006) ..............................................................13

**State Cases**

*In the Matter of Basco Logging, Inc.*,
   OAH Case No. 2020-ABC-03869 (Or. Office of Admin. Hrgs. For the Envt'l
   Quality Comm'n) ..............................................................10

**Federal Statutes**

15 U.S.C. § 1540(c) ..............................................................9

15 U.S.C. § 1540(g) ..............................................................1, 8, 9

16 U.S.C. § 1532(13) ..............................................................3

16 U.S.C. § 1532(19) ..............................................................3

16 U.S.C. § 1532(20) ..............................................................2

16 U.S.C. § 1533(d) ..............................................................3, 11

16 U.S.C. § 1536(a)(2) ..............................................................12

16 U.S.C. § 1538 ..............................................................*passim*

16 U.S.C. § 1538(a)(1) ..............................................................3

16 U.S.C. § 1538(a)(1)(B) ..............................................................1, 3,11

16 U.S.C. § 1538(a)(1)(G) ..............................................................3

**Rules**

Fed. R. Civ. P. 12(b)(1) ..............................................................5

Fed. R. Civ. P. 12(b)(6) ..............................................................5

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

**Regulations**

50 C.F.R. § 17.3 ...................................................................................................................3

50 C.F.R. § 222.102 ..........................................................................................................3, 11

50 C.F.R. § 223.203 ...........................................................................................................3

**Other Authorities**

H.R. Rep. No. 412, 93rd Cong. 1st Sess. (1973) ...........................................................3

PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION TO DISMISS    - iv -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

INTRODUCTION

This case is about a century-old decaying dam and its defective fish ladder that are causing significant harm to Oregon Coast Coho Salmon ("Coast Coho"), a species listed as threatened under the Endangered Species Act ("ESA").  The harm caused by the dam and ladder violate § 9 of the ESA, 16 U.S.C. § 1538, the federal statute which prohibits the "take" of listed species.  That harm occurs (i) every time a fish is barred access to spawning grounds by the dam, (ii) every time a fish is delayed access to spawning grounds by the dam, (ii) every time a fish injures itself or dies attempting to surmount the dam, and (iv) every time a juvenile fish is injured or dies entrained against or falling over the face of the dam.  That harm occurs multiple times, to multiple threatened fish throughout every year.  That harm and the attendant violation of federal law occurs regardless of the status of any water right associated with the dam and regardless of application of other state laws.

The primary jurisdiction doctrine is not applicable in this case.  This Court's ability to hear and determine this case is not dependent upon determinations of state law and requires no expert assistance from any state agency.  Further, the claims of harm are not time-barred.  Consequently, this Court has jurisdiction over this case, and the Motion to Dismiss should be denied.

BACKGROUND

Plaintiffs WaterWatch of Oregon, Pacific Coast Federation of Fishermen's Associations, Institute for Fisheries Resources, and Steamboaters (collectively the "Fish Protection Groups") bring this action under the citizen suit provisions of the ESA for violations of § 9. 16 U.S.C. §§ 1538(a)(1)(B) and 1540(g).  *See also*, Complaint, Dkt. 1, at ¶¶ 1, 3, and 4.  The Complaint concerns a dam that the Fish Protection Groups allege is harming Coast Coho salmon.

PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION TO DISMISS    - 1 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

Coast Coho are listed as threatened under the ESA, meaning Coast Coho are likely to become an endangered species within the foreseeable future, measured at the time of listing. Complaint at ¶ 17 and 16 U.S.C. § 1532(20).  They have declined precipitously in the past several decades for a variety of reasons including habitat degradation from blockages like dams. *Id.* at ¶ 18.  Dams wholly block, decrease, or fundamentally and harmfully alter the ability of Coast Coho to migrate upstream to spawning grounds and to out-migrate as part of juvenile development, and in their decision to list Coast Coho as threatened, the National Marine Fisheries Service ("NMFS") cited dams and similar blockages as a major factor in Coast Coho declines.  *Id.* and ¶ 21.

The Winchester Dam spans and blocks the North Umpqua River in Oregon.  Complaint at ¶¶ 23 and 27.  The North Umpqua River's headwaters are in the Umpqua National Forest, the River is a prized salmon and steelhead stream, and it has been designated as critical habitat for Coast Coho.  *Id.* at ¶¶ 19, 20, and 22.  Winchester Dam was originally constructed in 1890 as a wood crib dam with later additions of concrete and a fish ladder.  *Id.* at ¶¶ 23 and 26.  The fish ladder does not currently meet the criteria for design of adequate safe, timely, and efficient fish passage published by *both* the NMFS and Oregon Department of Fish and Wildlife ("ODFW"). *Id.* at ¶¶ 29-30.  The deteriorating condition of the dam and the fish ladder also harm Coast Coho because leakage through the dam creates false attraction flows away from the fish ladder and placement of the ladder, along with the false attractions, mean that fish are more likely jump at the face of the dam and to fall and injure themselves on the shallow, sometimes exposed, bedrock on which the dam and ladder are built.  *Id.* at ¶¶ 31-32; 34-36.  *See also*, Declaration of Christopher A. Frissell, Ph.D., submitted in support of this Opposition to Motion to Dismiss for expert opinion concerning the harms to Coast Coho from the dam ("Frissell Decl.").  Because

PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION TO DISMISS    - 2 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

there is no dedicated passage for juvenile Coast Coho migrating downstream, juveniles go over the face of the dam where again, they can be injured on the bedrock below. *Id.* at ¶ 33; Frissell Decl. at ¶ 10.

Injury and harm to Coast Coho constitutes illegal "take" of a threatened species under the ESA. Specifically, the ESA prohibits any person from "taking" an endangered species. 16 U.S.C. § 1538(a)(1)(B). The ESA defines "take" as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such conduct." 16 U.S.C. § 1532(19). *Id.* at ¶ 46. By regulation, NMFS has defined "harm" to include:

> Significant habitat modification or degradation which actually kills or injures fish or wildlife by significantly impairing essential behavioral patterns, including breeding, spawning, rearing, migrating, feeding or sheltering.

50 C.F.R. § 222.102. "Harassment" includes unintentional acts that make it more difficult for an endangered species to breed, feed, shelter, reproduce or raise its offspring. H.R. Rep. No. 412, 93rd Cong. 1st Sess. at 11 (1973); 50 C.F.R. § 17.3. *Id.* at ¶ 47. [1] NMFS has adopted a regulation pursuant to Section 4(d), 16 U.S.C. § 1533(d), making the take prohibition applicable to Coast Coho salmon. 50 C.F.R. § 223.203. Under 16 U.S.C. § 1538(a)(1)(G), it is unlawful to take threatened Coast Coho salmon in violation of the Section 4(d) regulation.

The ESA take prohibition applies to all "persons." 16 U.S.C. § 1538(a)(1). The ESA defines a "person" to include an individual, corporation, partnership, trust, association, or any other private entity. 16 U.S.C. § 1532(13). The defendant in this case is a "person" as defined by the ESA. Complaint, at ¶ 51.

---

[1] NMFS has also determined that its definition of "harm" is consistent with the definition of "harm" in regulations promulgated by the U.S. Fish and Wildlife Service which definition includes failure to act where a person has a duty to do so to avoid or prevent the harm.

PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION TO DISMISS    - 3 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

The Fish Conservation Groups allege that defendant, in its ownership, maintenance, and perpetuation of the Winchester dam, is taking Coast Coho by one or more of the following:

- blocking and/or delaying adult salmon migration and access to spawning habitat;

- harming or killing adult salmon in their efforts to traverse the dam to migrate or spawn;

- harming or killing juvenile salmon by blocking and/or delaying out-migration from spawning and rearing areas;

- harming or killing adult salmon by the state of disrepair of the fish ladder and/or the dam itself such that salmon are physically battered, impaled or injured on parts of the dam and ladder; and

- harming or killing adult salmon through the disrepair of the fish ladder and dam, including the use of materials on the ladder and in the dam that include compounds toxic to salmon;

and that defendant is therefore in violation of the ESA and required to end the illegal take by removal of the dam.  *Id.* at ¶¶ 43 and 53-57.

The Fish Conservation Groups are *not* making a claim regarding Oregon water rights. While the Complaint includes allegations regarding what is known about water rights for the reservoir behind the dam, *Id.* at ¶ 24 and 40, that information is included as a full statement of the status of the dam.  A determination of water rights is neither sought in this case by, nor necessary to, the Fish Conservation Groups' claims.  The Complaint includes no cause of action seeking adjudication or determination of a water right, only a cause of action regarding illegal take of a threatened species.

PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION TO DISMISS    - 4 -

As to Oregon law requirements for dams, these allegations also go to the violation of the

take prohibitions of § 9 of the ESA, as a violation of a legal duty to act to prevent harm.  *See*,

Complaint at ¶¶ 48, and 55.  This is only an ESA case, not an enforcement action under Oregon

state law.

STANDARD OF REVIEW

Defendant makes this Motion under Fed. R. Civ. P. 12(b)(1) arguing that this Court lacks

subject matter jurisdiction over claims made under a federal statute, the Endangered Species Act.

Dismissal is appropriate only when it appears beyond doubt that a plaintiff can prove no facts in

support of plaintiff's claims entitling plaintiff to relief.  *Roberts v. Carrothers*, 812 F.2d 1173,

1177 (9th Cir. 1987).  Under Fed. R. Civ. P. 12(b)(1), a defendant may challenge jurisdiction as

either a facial challenge or a factual challenge.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir.

2014).  A facial attack accepts the truth of the plaintiff's allegations, but asserts that even if true,

the allegations, on their face, are insufficient to invoke federal jurisdiction.  *Id.*; *Safer Air for*

*Everyone v. Meyer*, 3737 F.3d 1035, 1039 (9th Cir. 2004).  The district court resolves facial

attacks under 12(b)(1) as it would under Rule 12(b)(6) by accepting plaintiff's allegations as true

and drawing all reasonable inferences in plaintiff's favor.  *Leite*, 749 F.3d at 1121 (citing *Pride v.*

*Correa*, 719 F.3d 1120, 1122 (9th Cir 2013).

In a factual challenge under 12(b)(1), the defendant contests the truth of plaintiff's factual

allegations, generally introducing evidence outside the pleadings, in which case the plaintiff must

support jurisdictional allegations with competent proof under the same evidentiary standard that

governs summary judgment.  *Id.* (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)) and

*Safer Air*, 373 F.3d at 1039.  There is one caveat regarding a District Court making factual

determinations on a Motion under 12(b)(1).  That is when the jurisdictional and substantive

PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION TO DISMISS    - 5 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

issues are so intertwined that the question of jurisdiction is dependent on resolution of factual issues going to the merits.

That instance arises where, as here, the statute provides the basis for both subject matter jurisdiction of the federal court and plaintiff's substantive claim for relief. *Safer Air*, 373 F.3d at 1039-40. In that instance, the court is to apply the "default" 12(b)(1) standard of accepting plaintiff's allegations as true. *Id.* and at n. 3.

In this case, defendant makes a facial 12(b)(1) challenge providing no evidence that the Fish Conservation Groups' allegations are in question.[2] Rather, defendant argues that even if true, the court lacks subject matter jurisdiction under the doctrine of primary jurisdiction and/or because plaintiff's claims are time-barred. Motion to Dismiss, Dkt. 19, at 4 and 9. Defendant's claims are not supported by the law or the facts. The Fish Conservation Groups' claims in this case are timely and the doctrine of primary jurisdiction does not apply. This Court has subject matter jurisdiction over this case.

## ARGUMENT

I.    THE PRIMARY JURISDICTION DOCTRINE DOES NOT APPLY.

   A.    The Primary Jurisdiction Doctrine Is A Discretionary, Prudential Doctrine.

The primary jurisdiction doctrine is a prudential doctrine that "does not implicate the subject matter jurisdiction of the federal courts." *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 910 (9th Cir. 2019) (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 759 (9th Cir. 2015) (internal citations omitted)). It is entirely discretionary. It allows a court to stay, or

---

[2] Defendant provides two documents, but those documents simply confirm what the Fish Conservation Groups allege, which is that defendant has filed an after-the-fact water rights claim to store water behind the dam, but that the right has not yet been adjudicated as perfected and valid. Defendant has not provided any other evidence to challenge any facts in the Complaint.

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

sometimes dismiss without prejudice, a complaint pending resolution of an issue within or

consigned to the special competence of an administrative agency. *Id.* at 909. The Ninth Circuit

has outlined four factors to guide a court's exercise of its discretion:

> the court is to consider (1) the need to resolve an issue that (2) has been placed by
> Congress within the jurisdiction of an administrative body having regulatory authority (3)
> pursuant to a statute that subjects an industry or activity to a comprehensive regulatory
> authority that (4) requires expertise or uniformity of administration."

*Id.* at 910.

Importantly for this case, the Ninth Circuit has also defined what the primary jurisdiction

doctrine is *not* for. The primary jurisdiction doctrine is not to "secure expert advice" every time

a court is presented with an issue that may be within an agency's ambit, even if that agency has

special expertise. *Id.* A court should especially not invoke the doctrine to delay a case when the

agency in question is aware of, but has expressed no interest in or is not taking action on, the

subject matter of the litigation. *Id.* (citing *Astiana*, 783 F.3d at 761.) Rather, the Ninth Circuit

identifies efficiency as the deciding factor; primary jurisdiction should not be invoked and is not

preferred when referral to an agency would significantly postpone a ruling that a court is

otherwise competent to make. *Id. See also, Reid v. Johnson & Johnson*, 780 F.2d 952, 966-67

(9th Cir. 2015) (the doctrine applies in limited circumstances, not designed to secure expert

advice on issues within the court's ambit, and district court correct in declining to apply doctrine

of primary jurisdiction).

In *Robles*, the Ninth Circuit found the District Court erred in invoking primary

jurisdiction because the facts of the case were well within the court's jurisdiction and

competence and the agency in question was aware of the issue, but not taking action, leaving the

plaintiff with no effective forum for legitimate federal claims and likely resulting in undue delay.

*Id.* at 910. Further, the *Robles* Court noted that if there is a need for specialized or technical

PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION TO DISMISS    - 7 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

knowledge for the court to understand or rule on issues in the case, the parties can, as is

customary, submit expert testimony.  *Id.* at 911.  *See also, Coho Salmon v. Pacific Lumber Co.*,

61 F. Supp. 2d 1001, 1015-16 (N.D. Cal. 1999) (where the court rejected a request for dismissal

of an ESA citizen suit on primary jurisdiction arguments, because the court found that even

though a federal agency was involved in developing a habitat conservation plan for the species,

retaining the case would not invade the expertise of the agency and ESA take did not overlap

with nor risk conflicting decisions with the habitat conservation plan process, as that process was

designed to conserve salmon, not decide if logging operations had and were causing take); and

*Nicholson v. REI Energy, LLC*, 370 F. Supp. 3d 1199, 1205-06 (D.Or. 2019) (where the court

declined to invoke the primary jurisdiction doctrine, finding that even though Congress had

delegated regulatory authority to the Federal Communication Commission ("FCC"), court

precedent on the issue from the Ninth Circuit demonstrated that addressing the issues in the case

were within the conventional experience of judges and did not present issues of legal first

impression and waiting for the FCC to make a ruling would result in an indefinite and significant

delay).

> **B.** <u>This Court Has Jurisdiction Over Claims Arising Under The Endangered Species Act And The Primary Jurisdiction Doctrine Does Not Dictate Dismissal.</u>

Subject matter jurisdiction of this Court arises under the citizen suit provisions of the

ESA, a federal statute.  15 U.S.C. § 1540(g).  Citizen suit claims regarding § 9 take violations

under the ESA must be brought in federal district court.  *Id.*  The dam harms Coast Coho by

virtue of its existence, its design and disrepair, and its continued operation and maintenance.  *See*

Complaint and Frissell Decl, generally.  The Fish Conservation Groups bring these claims to

abate the § 9 ESA violations caused by the dam.

PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION TO DISMISS    - 8 -

The issues that must be decided in this case are whether listed species are being harmed and whether that harm is caused by the dam (either its existence, its condition, or its maintenance and operation – or in some instances the lack thereof).  Resolution of the case does not require a determination as to the existence or legitimacy of water rights to store water behind the dam for recreation or any other purpose.[3]  There is no agency, state or federal, to which Congress has assigned the authority and responsibility to decide a § 9 take case, or components of such a case, under the ESA.  Rather, Congress has expressly assigned that task to the federal District Courts. *See,* 15 U.S.C. § 1540(c) and (g).

Further, there are no technical or particularly-complicated issues that are outside of this court's ambit or experience.  The Fish Conservation Groups will present expert testimony for the court regarding fish biology, impacts to fish from dams, and dam engineering to prove their claims and assist the court's decision.  *See e.g.,* Frissell Declaration.[4]  While the Fish Conservation Groups assert that the ladder design is inconsistent with both NMFS and ODFW guidance, and that failure to maintain adequate fish passage does violate defendant's duties under Oregon law, this Court need not address that issue should it find that the dam is directly harming listed species.  Further, should this Court need to reach that issue, this Court is perfectly capable of hearing expert and lay testimony on that point and reaching a determination regarding the

---

[3] It also need not be determined because courts have found that state water law does not preempt or supplant the ESA; adjustments to rights may occur for the protection of listed species.  *See, e.g., County of Okanogon v. Nat'l Marine Fisheries Serv.*, 347 F.3d 1081, 1084-86 (9th Cir. 2003); *Klamath Water Users Protection Ass'n v. Patterson*, 204 F.3d 1206, 1213 (9th Cir. 2000); *Pacific Coast Fed'n of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*, 138 F. Supp. 2d 1228, 1250 n.20 (N.D. Cal. 2001).

[4] Discovery has not commenced and should the need arise, in order to prove their claims, the Fish Conservation Groups will retain and present additional expert testimony to assist the court.

PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION TO DISMISS    - 9 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

adequacy of the fish ladder without the need for special technical assistance from any state agency.

Finally, on the all-important point of efficiency in application of the primary jurisdiction doctrine, an indefinite stay or dismissal of this case leaves the Fish Conservation Groups with no forum for their claims (which must be brought exclusively in this court) and will result in undue delay. State agencies are aware of the water claims that defendant has made (a formal filing) and they are very much aware of the dam and its problems. *See,* Def's. Exhibit 101, Dkt. 20 at 6. Nonetheless, there is no pending process or action to either adjudicate any water right or to address the inadequate fish ladder. The state Department of Environmental Quality (DEQ) does have pending enforcement against a contractor for the defendant that performed repairs to the dam in 2018, that resulted in water pollution and damage to the environment, but that proceeding will have no bearing on, will not be in conflict with, and will resolve none of the issues raised in the Complaint in this proceeding.[5]

None of the four factors used by the Ninth Circuit in determining whether to apply the primary jurisdiction doctrine support application of the doctrine here. Rather, each of the factors shows that invocation of the doctrine would be incorrect, resulting in undue delay and significant prejudice to the Fish Conservation Groups. This court has subject matter jurisdiction, and the primary jurisdiction doctrine does not apply and should not be invoked.

## II.   THE FISH CONSERVATION GROUPS' CLAIMS ARE NOT TIME-BARRED.

The Fish Conservation Groups' claims in this case are not time-barred because the dam harms threatened Coast Coho repeatedly throughout every year. Complaint, generally; Frissell

---

[5] The enforcement case is *In the Matter of Basco Logging, Inc.*, OAH Case No. 2020-ABC-03869 (Or. Office of Admin. Hrgs. For the Envt'l Quality Comm'n).

PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION TO DISMISS   - 10 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

Decl. at ¶¶ 16-18.  Section 9 of the ESA, as applied through section 4(d), specifically prohibits the take of any threatened fish or wildlife.  16 U.S.C. §§ 1538(a)(1)(B) and 1533(d).  Take is defined in the regulations to mean harass, harm, pursue, hunt, wound, kill, trap, capture or to attempt to do any of those things. 50 C.F.R. § 222.102.  Harm is defined as any action that actually kills or injure fish or wildlife including significant habitat modification that actually kills or injures fish or wildlife by significantly *impairing essential life behavioral patterns including breeding, spawning, rearing, migrating*, feeding, or sheltering.  *Id.* (emphasis added).

A § 9 take claim is about the harm to the fish themselves, not about the mere construction of the dam, nor the specific listing of the fish.  Rather, a take of listed fish or animals is a violation of § 9 whenever that harm occurs.  Here the harm occurs multiple times, in multiple ways, throughout each year.

The deteriorating dam and inadequate and deteriorating fish ladder harm Coast Coho salmon, both adults and juveniles, through actual physical injury when migrating adults and juveniles injure themselves trying to navigate the structure.  Complaint at ¶ 31; Frissell Decl. at ¶¶ 11-12 and 14.  The dam and inadequate ladder also harm Coast Coho by significantly impairing essential life behavioral patterns.  For adult fish the dam and ladder impede and delay upstream migration in the fall which in turn impedes and delays spawning.  Complaint at ¶¶ 29-30; Frissell Decl. at ¶¶ 10 and 12-13.  Adult fish may not reach spawning grounds at all or may reach the grounds in a condition that impedes or prevents spawning.  Complaint at ¶¶ 29-30; Frissell Decl. at ¶¶ 13-14.  Juveniles are impeded and/or injured in their downstream migration in the spring when they are injured falling over the face of the dam or entrained against its face.  Frissell Decl. at ¶ 15.  Delayed migration for juveniles disrupts their life stages meaning that juveniles may reach a certain maturity level while still in the river instead of in the estuary or

PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION TO DISMISS   - 11 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

ocean, a situation that is harmful to their development. *Id.* Coast Coho at all life stages are harmed when the dam and inadequate ladder cause fish to concentrate in larger than natural numbers above or below the dam in their impeded efforts to traverse the dam and those concentrated populations of fish increase predation on Coast Coho. Frissell Decl. at ¶¶ 13 and 15.

These harms to listed fish happen repeatedly throughout each year. Frissell Decl. at ¶¶ 16-18. Each take is a violation of the ESA. Claims related to those incidents of take in the last six years **and** the expected take to occur into the future, are in no way time-barred.

Defendant raises the issue of "continuing violations" and claims that the case law dictates a ruling it its favor. Motion, Dkt. No. 19, at 19. That argument is wrong for at least two separate reasons. First, there was not a single violation that has "continued" and for which the Fish Conservation Groups now seek redress. Rather, this is a series of individual, multiple, and repeated violations that happen at multiple times, to multiple different fish, throughout each year. The Fish Conservation Groups are not relying on a "continuing violation" type argument, of the type at issue in the cases referenced by defendant.

Second, even if this were considered a kind of continuing violation as that term has been assessed in the case law, it is plain this case would still not be time-barred according to the continuing violation doctrine. Almost all the cases that have examined the continuing violation doctrine have been against government agencies for breach of an agency obligation under the ESA, not § 9 claims against a private defendant. Those have been, for example, a claim for a failure of an agency to consult under § 7 of the ESA, 16 U.S.C. § 1536(a)(2), or failure of an agency to designate critical habitat, *Id.* § 1533(3)(A), or failure of an agency to complete a recovery plan for a listed species. *Id.* § 1533(f). As such, those cases are of limited (if any)

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

application to this case where the claims are not about failure of a duty to act on a regulatory

obligation, but about ongoing direct harm to a listed species.

While courts have been mixed on the question of continuing violation, many find that the

government should not be able to evade their statutory obligations under the ESA when the

activity constitutes a continuing failure of statutory duty, simply because the government has

been failing its duties for a long time. *See, e.g., Coalition for a Sustainable Delta v. Fed'l*

*Emergency Management Ass'n*, 812 F. Supp. 2d 1089, 1107-1111 (E.D. Cal. 2011) (court finds

failure of duty is an ongoing action not time-barred); *Wildearth Guardians v. Salazaar*, 2009 WL

6443120, * 4-5 (S.D.Tex. 2009) (claims against agency for continuing failure to complete

recovery plan not time-barred); *Institute for Wildlife Protection v. U.S. Fish and Wildlife Serv.*,

2007 WL 4117989, *4-5 (D. Or. 2007) (applies doctrine to find claims not barred and case

provides overview of mixed case law to that date); *Wilderness Soc'y v. Norton*, 434 F.3d 584,

589 (D.C. Cir. 2006) (claims not time-barred); *S. Utah Wilderness Alliance v. Norton*, 301 F.3d

1217, 1232 (10th Cir. 2002) (claims not barred); and *Alsea Valley Alliance v. Evans*, 161 F.

Supp. 2d 1154 (D. Or. 2001) (claims not barred).  *Cf. Center for Biological Diversity v.*

*Hamilton*, 453 F.3d 1331 (11th Cir. 2006) (because obligation to designate critical habitat is

subject to strict deadlines, failure to designate habitat within deadline commenced running of

statute of limitations; claims time-barred).  *See also, Sierra Club v. Portland Gen'l Elec. Co.*,

663 F. Supp. 2d 983, 994 (D. Or. 2009) (court declines to apply continuing violation doctrine,

but still finds claims not time-barred because each day the coal plant facility is operating without

the proper Clean Air Act permits and required pollution control to be a discrete and actionable

violation of the Clean Air Act).

PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION TO DISMISS   - 13 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

As noted previously, the take of Coast Coho is not a single event arising from a single statutory obligation at a single point in time.  The prohibition on take applies to the entire species, to each member of the species, and it applies throughout the time that a species is listed.  Any incident of take, at any time, is prohibited.  Here, the take did not just occur on the day the dam was built.  The take did not only occur the day Coast Coho were listed.  In effect, the defendant here seeks to have the court declare that because this dam has been causing take for so long, any take claim against it for any recent or future take is somehow time barred.  There no "grandfathered rights" to take, as defendant seems to imply.

In defendant's scenario, the dam and fish ladder, despite their continually deteriorating condition and the harm they cause every year, would have only caused take for six years from the date of the first listing. Then, apparently, the fish that are harmed in years thereafter are no longer protected from take.  The ESA prohibitions in the statute have somehow evaporated, because no suit was brought within the first six years of fish being listed despite fish continuing to be harmed.

This is plainly not the law.  The case law cited by defendant in support of their statute of limitations argument is simply not applicable here.[6]  This case is not against a government agency for failing a duty under the statute, but rather against an entity that is harming multiple members of a listed species at multiple times throughout each year in the past six and into the future.

To allow defendants to simply 'outlast' the ESA makes no sense.  The dam and inadequate fish ladder harm fish almost every season of every year.  Defendant's statute of

---

[6] Even if the continuing violation case law were directly analogous, the weight of that case law makes clear that the continuing nature of the violation prevents this case from being time-barred.

PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION TO DISMISS   - 14 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

limitations claims equate to an argument that "we have been killing and harming listed Coast

Coho for so long, we are now in the clear." That is not the law and cannot be a defense to the

take prohibitions of the ESA. This case is timely and this Court has subject matter jurisdiction

over the Fish Conservation Groups' claims.

CONCLUSION

Defendant is incorrect that this Court lacks subject matter jurisdiction. The primary

jurisdiction doctrine is not about whether a court has subject matter jurisdiction and the factors

set forth by the Ninth Circuit show that application of the primary jurisdiction doctrine to this

case is not appropriate. This case is also not time-barred. The dam and fish ladder harm fish in

violation of the take prohibition of the ESA throughout each year. That take is actionable in this

suit and the claims are timely. The Fish Conservation Groups respectfully request the court deny

defendant's motion to dismiss in its entirety.

Respectfully submitted this 8th day of March, 2021.

*s/ Janette K. Brimmer*
JANETTE K. BRIMMER (WSB #41271)
jbrimmer@earthjustice.org
*[Admitted Pro Hac Vice]*
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-7340 | Phone

*Attorneys for Plaintiffs*

KARL G. ANUTA (OSB #861423)
kga@integra.net
Law Office of Karl G. Anuta, P.C.
735 S.W. First Avenue, 2nd Floor
Portland, Oregon 97204
(503) 827-0320 | Phone
(503) 228-6551 | Fax

*Local Counsel for Plaintiffs*

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA 98104*
*(206) 343-7340*