IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**WATERWATCH OF OREGON**, **PACIFIC**
**COAST FEDERATION OF**
**FISHERMEN'S ASSOCIATIONS**,
**INSTITUTE FOR FISHERIES**
**RESOURCES**, and **STEAMBOATERS**,

         Plaintiffs,

   v.

**WINCHESTER WATER CONTROL**
**DISTRICT**,

         Defendant.

Case No. 3:20-cv-01927-IM

**OPINION AND ORDER**

**IMMERGUT, District Judge.**

       This matter comes before the Court on Defendant's Motion to Dismiss under Federal

Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. ECF 19. Defendant

asserts that Plaintiffs' action should be dismissed because the Oregon Water Resources

Department ("OWRD") and Oregon Department of Fish and Wildlife ("ODFW") have primary

jurisdiction over the water rights, regulation of dams, and fish passage criteria at issue in the

Complaint. In the alternative, Defendant argues that Plaintiffs' cause of action under the

Endangered Species Act ("ESA") is time-barred. For the reasons set forth below, Defendants'

PAGE 1 – OPINION AND ORDER

Motion to Dismiss, ECF 19, is denied.[1] The following facts are alleged in Plaintiffs' complaint and are accepted as true at this stage of the proceeding.

## BACKGROUND

Winchester Dam was built on the North Umpqua River in 1890. ECF 1 at ¶ 23. In 1907, the dam was raised from four to sixteen feet, and in 1945, a fish ladder was added to the north side of the dam. *Id.* at ¶¶ 23, 26. Today, the 450-foot-long Winchester Dam completely spans the North Umpqua River, and Defendant Winchester Water Control District owns and operates the dam. *Id.* at ¶¶ 2, 16, 23.

The North Umpqua River, including the stretch around Winchester Dam, is a critical habitat for Oregon Coast coho salmon ("Coast coho"). *Id.* at ¶¶ 19–20, 22. Coast coho are a threatened species under the ESA and have been since 1997. *Id.* at ¶ 17.

Winchester Dam is a passage impediment and hazard for migrating adult and juvenile Coast coho. *Id.* at ¶ 25. The dam's fish ladder does not meet the criteria for adequate fish passage under National Marine Fisheries Service ("NMFS") and ODFW rules and guidelines. *Id.* at ¶¶ 29–30. The ladder's placement on the far north side of the dam near bedrock makes the ladder difficult for salmon to find, resulting in injury to salmon going over the top of the dam and falling onto the bedrock. *Id.* at ¶ 32–33. The dam experiences significant leakage through its structure, especially in the area of the dam immediately next to the fish ladder. *Id.* at ¶ 35. This leakage creates many false attraction flows that further delay and injure Coast coho trying to cross the dam. *Id.* at ¶¶ 31, 34–35. The ODFW has noted that Winchester Dam hinders upstream

---

[1] Defendant requested oral argument on the Motion to Dismiss. ECF 19. This Court has determined that oral argument will not help in the resolution of the issues before the Court. *See* L.R. 7-1(d). Therefore, the request for oral argument is denied.

passage for Coast coho and that the dam's fish ladder does not meet current requirements for jump heights, water velocities, or attraction flows. *Id.* at ¶ 36.

In 2018, the ODFW documented a fish kill resulting from attempts to repair a large hole under Winchester Dam. *Id.* at ¶ 38. The NMFS informed the ODFW that harm to Coast coho could be assumed. *Id*. The Oregon Department of Environmental Quality ("DEQ") determined that the attempted repairs caused chemical pollution killing fish, and the DEQ issued a civil penalty against Defendant. *Id*. In 2019, the ODFW identified Winchester Dam as its second highest priority among privately owned barriers statewide for enforcement actions based on the needs of native migratory fish, which include Coast coho. *Id*. at ¶ 42.

In short, Plaintiffs allege Winchester Dam is harming or killing Coast coho when they traverse the dam to migrate or spawn. *Id.* at ¶ 43. The harm occurs when the salmon are battered, impaled, or otherwise injured on parts of the dam, the fish ladder, and the bedrock right below the dam. *Id*. at ¶¶ 32–33, 43.

The ESA prohibits the "take" of an endangered species and defines "take" as "to harass, harm, pursue, [etc.] or to attempt to engage in any such conduct."16 U.S.C. § 1532(19); *see also* ECF 1 at ¶ 46. The NMFS defines "harm" as "an act which actually kills or injures fish or wildlife," and harm includes "significant habitat modification or degradation which actually kills or injures fish or wildlife by significantly impairing essential behavior patterns, including, breeding, spawning, rearing, migrating, feeding or sheltering." *Id.* at ¶ 47 (internal quotation marks omitted) (quoting 50 C.F.R. § 222.102). The NMFS has adopted a regulation under the ESA to prohibit the take of Coast coho, and this regulation applies to Defendant. *Id*. at ¶¶ 49–50; *see also* 50 C.F.R. § 223.203.

Plaintiffs, four organizations that work to protect salmon in Oregon, filed this citizen suit under the ESA against Defendant on November 6, 2020. ECF 1. Plaintiffs seek a declaration that Defendant has violated the "salmon 4(d) rule," 50 C.F.R. § 223.203, and the Endangered Species Act, 16 U.S.C. § 1538(a)(1)(G) and 1538(1)(B), by "failing to provide adequate fish passage at the Winchester Dam and/or by failing to remove the Winchester Dam." ECF 1 at 15. Plaintiffs seek an injunction requiring Defendant to either remove the dam or construct adequate fish passage. *Id*.[2]

On January 29, 2021, Defendant filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF 19. Defendant argues that this case should be dismissed under the doctrine of primary jurisdiction or because the claims are time-barred by the applicable statute of limitations. *Id*. at 2. Plaintiffs responded to the motion on March 8, 2021, ECF 24, submitting multiple declarations in support, ECF 25–29, 32–34. On April 6, 2021, Defendant filed its reply to its motion, ECF 35, as well as a motion to strike one of Plaintiffs' declarations, from Christopher A. Frissell, Ph.D, ECF 36. Briefing on the motion to strike was completed on April 29, 2021. *See* ECF 37; ECF 38.

## LEGAL STANDARDS

A motion to dismiss under FRCP 12(b)(1) "challenges the court's statutory or constitutional power to adjudicate the case before it." 2A James W. Moore et al., Moore's Federal Practice, ¶ 12.07, at 12–49 (2d ed. 1994). Once the question of jurisdiction is raised, the burden of establishing subject matter jurisdiction rests on the party asserting such jurisdiction.

---

[2] At first, Plaintiffs also included a count seeking civil penalties for intentional take of a listed species. *See* ECF 1 at ¶¶ 58–64; *id*. at 15. On January 26, 2021, Plaintiffs filed an Unopposed Motion for Partial Voluntary Dismissal of that count, ECF 16, which this Court granted on January 28, 2021, ECF 18.

*Thomson v. Gaskill*, 315 U.S. 442, 446 (1942). In reviewing such a motion, the court presumes

lack of subject-matter jurisdiction until the plaintiff proves otherwise in response to the motion.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see*

*also Robinson v. United States*, 586 F3d 683, 685 (9th Cir. 2009).

A Rule 12(b)(1) motion may be either a facial or factual attack. *See Safe Air for Everyone*

*v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the

allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.

By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

themselves, would otherwise invoke federal jurisdiction." *Id*. In evaluating a facial jurisdictional

challenge, the Court can only consider "allegations in the complaint" to resolve the motion.

*Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White v.*

*Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

## DISCUSSION

Defendant brings its motion to dismiss under Rule 12(b)(1) for lack of subject-matter

jurisdiction. ECF 19. Defendant also brings a motion to strike the Declaration of Christopher A.

Frissell, Ph.D. ("Declaration"), ECF 25, which Plaintiffs filed in support of their response in

opposition to Defendant's motion to dismiss. ECF 36.

Because the motion to strike turns on the single issue of whether Defendant's

jurisdictional attack is facial or factual, this Court addresses that motion first. The Court then

considers Defendant's motion to dismiss.

**A. Defendant Brings a Facial Jurisdictional Attack, and Accordingly Defendant's**

**Motion to Strike is Granted.**

The parties dispute whether Defendant's jurisdictional challenge is facial or factual and, so, dispute whether this Court may consider a declaration in deciding the jurisdictional issue. Defendant contends that it brings a facial challenge, which prevents this Court from considering the Declaration. ECF 36 at 3–4.[3] Plaintiffs argue that Defendant brings a factual challenge, making the Declaration fair game. ECF 37 at 6–7.

Dr. Frissell is an expert in salmonid ecology and conservation and has spent more than thirty years researching aquatic ecology and conservation biology in and around Oregon. ECF 25 at ¶¶ 1–5. In the Declaration, Dr. Frissell opines on Winchester Dam's negative effects on salmon, including Coast coho. *See id.* at ¶¶ 11–16. This Court finds that Defendant brings a facial jurisdictional attack. Because this Court may not consider the Declaration in evaluating this motion, Defendant's motion to strike is granted.

Although the parties did not initially dispute that Defendant's jurisdictional challenge is facial, Plaintiffs now contend that it is factual. ECF 37 at 6. "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. Defendant does not dispute the truth of any allegations; rather, Defendant cites exhibits to *confirm* various aspect of Plaintiff's complaint. [4] Exhibit 101 and 102 confirm that, "[a]s Plaintiffs allude to in their complaint, the

_____

[3] Defendant also challenges the admissibility of the Declaration under Federal Rule of Evidence ("FRE") 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). ECF 36 at 4–5. Because the single issue of whether Defendant's motion under 12(b)(1) presents a facial attack or a factual attack resolves the motion to strike, the Court will not address the parties' arguments about FRE 702 and *Daubert.*

[4] Exhibit 101 is a surface water registration statement for a pre-1909 vested water right claim Defendant filed with the OWRD, Exhibit 102 is a registration statement map Defendant

District has such a claim registration statement on file with OWRD, for a pre-1909 water right, for recreational use of the water impoundment created by the dam." ECF 19 at 5. Exhibit 103, confirms Plaintiffs' allegation that OWRD has not yet provided a final adjudication of Defendant's pre-1909 water right claim. ECF 19 at 5–6; ECF 1 at ¶ 24. Thus, this Court holds that Defendant's jurisdictional challenge is facial, not factual.

Because Defendant asserts a facial challenge, the Declaration is not admissible even though "Dr. Frissell's declaration speaks directly to several of Defendant's arguments for dismissal." ECF 37 at 2. As Defendant argues, because the Declaration provides new facts and allegations not contained in the Complaint, the "appropriate avenue for Plaintiffs to add new matters . . . for the Court's consideration is to seek leave to amend their Complaint." ECF 36 at 3–4. This Court agrees, and Defendant's motion to strike is granted.

**B.  Motion to Dismiss**

Defendant makes two arguments in its motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. First, Defendant argues that the Complaint should be dismissed under the primary jurisdiction doctrine, and in the alternative, Defendant argues that Plaintiffs' cause of action is time-barred. *See* ECF 19 at 1. As explained below, this Court finds that the primary jurisdiction doctrine does not apply and that Plaintiff's cause of action is not time-barred.

---

submitted to the OWRD to support its water right claim, and Exhibit 103 is a map showing the geographical areas in which the OWRD has adjudicated water right claims. ECF 20. Defendant states that the three exhibits "demonstrate the District's claim for pre-1909 water rights and provide context for the Court's understanding of Oregon's water right adjudication process for pre-1909 claims, as well as for the laws that govern unadjudicated claims." *Id*. at 4–5. The Court granted Defendant's motion and specified that judicial notice of the three exhibits is "for the limited purpose of considering and deciding Defendant's pending Motion to Dismiss." ECF 21. "[U]nder [FRE] 201, a court may take judicial notice of matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal quotation marks and citation omitted).

When a defendant brings a facial challenge under Rule 12(b)(1), the court resolves it as it would under Rule 12(b)(6), "[a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

### 1. This Court Declines to Apply the Primary Jurisdiction Doctrine at This Time

#### i. Arguments

Defendant argues that because the OWRD and the ODFW "have primary jurisdiction over the regulation of water rights and fish passage in Oregon[,] . . . this Court should abstain from interfering with the jurisdiction and core functions of these state agencies and dismiss this action under the primary jurisdiction doctrine." ECF 19 at 4–5. Defendant explains that state laws give the OWRD jurisdiction over water rights and dams and the ODFW jurisdiction over fish passage. *See id.* at 5–7. Defendant then asserts that Plaintiffs' case is "premised on alleged violations of state laws governing fish passage and water rights," and therefore, "the primary jurisdiction doctrine prevents Plaintiffs from circumventing the jurisdiction of OWRD and ODFW." *Id.* at 7–9.

In response, Plaintiffs state that this is "only an ESA case, not an enforcement action under Oregon state law." ECF 24 at 10. They further contend that they are "not making a claim

regarding Oregon water rights," and that this information was in the Complaint "as a full statement of the status of the dam." *Id*. at 9 (emphasis omitted). Plaintiffs state that a "determination of water rights is neither sought in this case by, nor necessary to," their single cause of action "regarding illegal take of a threatened species" under the ESA. *Id*. As for the Oregon law requirements for dams, Plaintiffs similarly urge that "these allegations also go to the violation of the take prohibitions of § 9 of the ESA, as a violation of a legal duty to act to prevent harm." *Id*. at 10 (citing ECF 1 at ¶¶ 48, 55). Defendant responds that Plaintiffs "mischaracterize their Complaint," which "deliberately chose to premise their cause of action" on Oregon law issues. ECF 35 at 4–5. Defendant states that Plaintiffs' cause of action is "quite literally for this Court to find that Defendant's alleged 'failure' to adhere to requirements of state laws governing water rights, dam maintenance, and fish passage facilities 'is the proximate cause of unlawful take[.]'" ECF 35 at 4 (quoting ECF 1 at ¶ 55); *see also* ECF 1 at ¶¶ 45–57 (Count I).

  **ii.**  **Analysis**

  The primary jurisdiction doctrine "is a prudential doctrine that does not 'implicate[ ] the subject matter jurisdiction of the federal courts.'" *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 910 (9th Cir. 2019) (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 759 (9th Cir. 2002)). (alteration in original). "Rather, it permits courts to determine that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Id*. (citation and internal quotation marks omitted). Courts invoking this doctrine may "stay proceedings or [ ] dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Id*. at 909–10 (internal quotation marks omitted) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114).

The Ninth Circuit has provided the following guidance for courts' consideration of this doctrine:

> While no fixed formula exists for applying the doctrine of primary jurisdiction, we consider: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.

*Id.* at 910 (internal quotation marks omitted and citations).

And the Ninth Circuit has explained that the doctrine's purpose "is not to secure expert advice from an agency every time a court is presented with an issue conceivably within the agency's ambit," but to promote efficiency, the doctrine's "deciding factor." *Id.* (internal quotation marks and citations omitted); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 966 (9th Cir. 2015) (explaining that the doctrine "is useful" in the "limited circumstances" where "a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency" (internal quotation marks and citations omitted)). Thus, "[e]ven when agency expertise would be helpful, a court should not invoke primary jurisdiction" where (1) the "agency is aware of but has expressed no interest" in the litigation's subject matter, or (2) "when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make." *Robles*, 913 F.3d at 910 (quoting *Astiana*, 783 F.3d at 760) (emphases omitted). Applying the doctrine at the motion to dismiss stage "depends on the nature of the case." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1088 (9th Cir. 2006). The question is "whether any set of facts could be proved which would avoid application of the doctrine." *Id*. If so, the primary jurisdiction doctrine may not be applied on a motion to dismiss. *Id*.

This Court declines to dismiss or stay this action at this time based on the primary

jurisdiction doctrine. The legal question presented—whether Defendant violated or is violating

the ESA's "take" prohibition—does not raise any technical or particularly complicated issues

outside of this Court's competency and experience. Indeed, "enforcement of the ESA's

prohibition against the 'take' of endangered or threatened species has been placed squarely

within the jurisdiction of the courts through the ESA's citizen-suit provisions." *Coho Salmon v.

Pac. Lumber Co*., 61 F. Supp. 2d 1001, 1016 (N.D. Cal. 1999) (rejecting primary jurisdiction

argument); *see also Coho Salmon v. Pacific Lumber Co.*, 30 F. Supp. 2d 1231, 1245 (N.D. Cal.

1998) ("In determining whether a take of coho salmon has occurred or is likely to occur, . . . the

court must only decide whether [defendant's] logging operations have resulted in a take of or

will cause imminent harm to coho salmon in the watersheds at issue."); 16 U.S.C. § 1540(c),

(g)(1) (ESA provisions providing for federal district court jurisdiction). Invoking the primary

jurisdiction doctrine at this point would merely create needless delay. *See, e.g.*, *Nicholson v. REI

Energy, LLC*, 370 F. Supp. 3d 1199, 1206 (D. Or. 2019) (rejecting primary jurisdiction argument

based on Federal Communication Commission ("FCC") authority because the Ninth Circuit had

"provided binding precedent on the issue presented by this case," establishing that "this case

presents neither an issue of first impression nor a question better suited to the expertise of the

agency," and because "it is unclear when the FCC will issue its ruling").

Additionally, even assuming reliance on state law would result in the invocation of the

primary jurisdiction doctrine, some "set of facts could be proved which would avoid application

of the doctrine." *Davel*, 460 F.3d at 1088 (providing motion to dismiss standard). While this

Court agrees with Defendant that the Complaint arguably premises the alleged ESA violation on

failure to comply with various state laws, *see, e.g.*, ECF 1 at ¶¶ 52-54, the Complaint also alleges

facts that plausibly suggest a take has occurred or is occurring without reliance on the work of Oregon agencies or Oregon law. *See, e.g.*, ECF 1 at ¶¶ 3, 17–23, 25–28, 32–35, 43, 55. It alleges that certain facts violate both Oregon and Federal criteria and guidelines. *See, e.g.*, *id*. at ¶¶ 29–31, 46–51. Further, that a state agency identified the *fact* of harm to Coast coho salmon, *see, e.g.*, *id.* at ¶ 38, does not necessarily implicate an issue that requires agency "expertise or uniformity in administration." *Robles*, 913 F.3d at 910 (citation and internal quotation marks omitted). While the state agencies may have primary jurisdiction over issues of enforcing and negotiating state law with potential violators, *see, e.g.*, O.R.S. § 509.625, scientific facts do not necessarily implicate such concerns. *Cf. Davel*, 460 F.3d at 1088–89 (finding primary jurisdiction doctrine applicable because "threshold dispute" was interpretation of an agency order that "reflect[ed] policy concerns or issues requiring uniform resolution").

Plaintiffs' ability to prove their case independently of state law distinguishes this case from *Wild Fish Conservancy v. Salazar*, 688 F. Supp. 2d 1225 (E.D. Wash. 2010), which Defendants substantially rely on. *See* ECF 19 at 7–9; ECF 35 at 2–4. In *Wild Fish Conservancy*, the Conservancy sued the FWS and other agencies, alleging the defendants' fish hatchery violated the Washington State Water Code and Washington's Fishway Law. *Wild Fish Conservancy*, 688 F. Supp. 2d at 1227. The Conservancy claimed that these state law violations "necessarily" violated or "constituted a failure to comply with" various federal laws, including the Administrative Procedure Act ("APA"). *Id*. The court applied the primary jurisdiction doctrine because the "state Water Code is a comprehensive regulatory scheme that requires expertise and uniformity in administration" and "compliance and enforcement of the alleged fishways law violations is committed to the discretionary authority of [the Washington Department of Fish and Wildlife]." *Id*. at 1238. In contrast, Plaintiffs here bring their sole cause

of action under the citizen suit provision of the ESA, 16 U.S.C. § 150(g). ECF 1 at ¶¶ 1, 4, 51.

An alleged violation of the take clause of the ESA is not "premised on alleged violations of state

laws," as Defendant contends. ECF 19 at 7. Additionally, in *Wild Fish Conservancy* the

defendants had filed a permit application to the Washington Department of Ecology, and the

Department was "actively processing that application . . . which will impact water operations at

the Hatchery." *Wild Fish Conservancy*, 688 F. Supp. 2d at 1230 n.2. In contrast, in this

Complaint, while there are allegations demonstrating agency interest, ECF 1 at ¶¶ 38, 42; *see*

*also Astiana*, 783 F.3d at 761, there is no indication that either the OWRD or the ODFW is

conducting any process that will impact the operations of Winchester Dam.[5] *Cf. Nicholson*, 370

F. Supp. 3d at 1206 (rejecting primary jurisdiction argument because "it is unclear when the FCC

will issue its ruling" and "a stay in this case could significantly delay a ruling that . . . this Court

is competent to make").

In sum, resolution of this case only requires a determination of a question within this

Court's competence: whether the Winchester Dam is causing take of Coast coho. That issue does

not require expertise specific to an administrative body, and Plaintiffs may prove their case

without reliance on state agency expertise or issues requiring uniform enforcement. At this stage

---

[5] In its reply, Defendant contests Plaintiffs' "insinuat[ion] . . . that the relevant state agencies are not taking action on the fish passage and dam maintenance issues raised in the Complaint." ECF 35 at 6 n.3. Defendant claims that a declaration from the District's President would reveal that "the District is actively working with ODFW, OWRD, the Oregon Department of State Lands and appropriate officials to address concerns with fish passage and the condition of the dam and, further, that the District was doing so before Plaintiffs' Complaint was ever filed." *Id.* But as Defendant recognizes, the Court cannot consider this assertion in evaluating a facial attack on subject-matter jurisdiction. Thus, for the purposes of this motion, there is no pending process that will impact Winchester Dam, and Defendant's discussion of *Wild Fish Conservancy* is inapposite to the current case.

of the proceedings, this Court declines to dismiss or stay this case based on the primary jurisdiction doctrine.

### 2. The Statute of Limitations Does Not Apply to Bar This Claim

Defendant next argues that Plaintiffs' case is time-barred. Because the parties appear to agree[6] and because it does not affect the resolution of this issue, this Court adopts the six-year statute of limitations set forth in 28 U.S.C. § 2401(a) for purposes of this motion. *See Ctr. for Biological Diversity v. EPA*, 847 F.3d 1075, 1087 (9th Cir. 2017) (holding that where "a plaintiff alleges that an agency failed to comply with the ESA's procedural requirements, we apply the general six-year statute of limitations set forth in 28 U.S.C. § 2401(a)"); *Nw. Env't Advocs. v. EPA*, No. 3:12-cv-01751-AC, 2017 WL 1370713, at *10 (D. Or. Apr. 11, 2017).

### 1. Arguments

Defendant argues that "the gravamen of Plaintiffs' complaint is that the Winchester Dam has been causing take of ESA-listed Coast Coho ever since the species was listed in 1997 because the fish passage facilities are inadequate." ECF 19 at 9. Defendant offers three potential dates at which Plaintiff's action accrued and contends that assuming any one of them applies, the case is time-barred. The three proposed options are: (1) "the design and update to the fish passage facilities that occurred in the 1980s"; (2) when Coast Coho were listed under the ESA in 1997; or (3) "in 2006 when ODFW appears to have last updated its fish passage criteria." *Id.* at 10–11 & 11 n.5. Lastly, Defendant acknowledges a split of authority on the continuing violations

---

[6] As Defendant discusses, the ESA includes no explicit statute of limitations. Pointing to various statutes, Defendant "submits that a four-year statute of limitations period should be inferred but, even if a six-year period is utilized, Plaintiffs' claims are nonetheless clearly time-barred." ECF 19 at 10. In reply, Defendant states that the parties agree that a six-year state of limitations period applies. ECF 35 at 6 (citing ECF 24 at 17).

doctrine and argues that this Court should find that this doctrine does not apply to save Plaintiff's case. *Id*. at 11–15.

Plaintiff responds that a "§ 9 take claim is about the harm to the fish themselves, not about the mere construction of the dam, nor the specific listing of the fish. Rather, a take of listed fish or animals is a violation of § 9 whenever that harm occurs." ECF 24 at 16. As for the continuing violations doctrine, Plaintiff first argues that this doctrine is inapplicable because there is no single take that has "continued." *Id*. at 17. Plaintiff then argues that even under the continuing violations doctrine Plaintiff's case is not time-barred. ECF 24 at 17–20. Plaintiff notes that "many [courts] find that the government should not be able to evade their statutory obligations under the ESA when the activity constitutes a continuing failure of statutory duty, simply because the government has been failing its duties for a long time." *Id*. at 18 (collecting cases).

### 2. Analysis

The parties are correct that this area of the law is often unclear. *See* ECF 19 at 12–13; ECF 24 at 18. Even so, this Court finds that the statute of limitations does not bar Plaintiff's claim.

The parties both note an opinion by Judge Brown that declined to dismiss an ESA case based on a statute of limitations argument despite the magistrate judge recommending such dismissal. ECF 19 at 12; ECF 24 at 18; *Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv*., No. 07-cv-358-PK, 2007 WL 4117978 at *1 (D. Or. Nov. 16, 2007). In that case, a conservation group sued FWS for flouting its statutory duties under the ESA. *Id.* Judge Brown noted that "courts outside of the Ninth Circuit are split as to when the right to bring an action accrues as a result of agency inaction, and there does not appear to be any explicit Ninth Circuit authority on

point." *Id.* at *4. Judge Brown then considered the "underlying purpose of statutes of limitations and note[d] such statutes are grounded in equity and based on the principles of avoiding stale claims, achieving finality, and protecting those who rely on the law." *Id.* at *5. Judge Brown concluded that a continuing violation obviates the staleness concern; "neither the parties nor the public has demonstrated any protectable reliance or change of position based on [the defendant agency's] lengthy inaction"; and that any judicial decision "likely would promote finality by eliminating the uncertainty resulting from [the agency's] inaction." *Id.* She also found dismissal inappropriate because "it would mean that [the agency] could immunize its allegedly unreasonable delay [in complying with statutory duties] from judicial review simply by extending that delay for six years." *Id.* (citation and internal quotation marks omitted). Judge Brown found persuasive the notion that the "statute of limitations was inapplicable because the plaintiff did not 'complain about what the agency has done but rather about what the agency has yet to do' in order to comply with its binding statutory duty . . . ." *Id.* at *5 (quoting *The Wilderness Soc. v. Norton*, 434 F.3d 584, 589 (D.C. Cir. 2006)).[7] While relying in part on continuing violation concepts, Judge Brown also relied on a Sixth Circuit opinion which explained that cases presenting "a series of discrete violations rather than a single violation" do not fall into the continuing violation doctrine and are timely based on each violation. *Id.* at *6 (citing *Nat'l Parks Conservation Ass'n v. TVA*, 480 F.3d 410, 416–17 (6th Cir.2007)).

---

[7] Defendant also cites a case in which now-Chief Judge Hernandez distinguished Judge Brown's opinion and dismissed a case as time-barred. ECF 19 at 12; *see Nw. Env't Advocs.*, 2017 WL 1370713. That case is not on point. Unlike here, that plaintiff did not complain about "what the agency has yet to do" but complained that the EPA had affirmatively taken action. *Id.* at *10–11 (citation and internal quotation marks omitted) (noting that ESA § 7 claims require an affirmative act or authorization by the defendant agency).

This Court finds Judge Brown's reasoning persuasive. Applying the relevant considerations Judge Brown identified to Defendant's statute of limitations argument, this Court finds there is no staleness concern because the take of Coast coho continues to occur. Additionally, any judgment from this Court would advance—not impede—finality given the ongoing uncertainty about the dam. And, as in Judge Brown's case, Plaintiffs plausibly allege that they do not "complain about what the [defendant] has done but rather about what the [defendant] has yet to do in order to comply with its binding statutory duty" to avoid harm to Coast coho; the statute of limitations does not apply to bar the claim related to this "ongoing duty." *Inst. for Wildlife Prot*., 2007 WL 4117978, at *5–6 (internal quotation marks and citations omitted) (concluding the same). Plaintiffs allege that the ESA prohibits take of a protected species and that individuals have a duty to act to avoid or prevent harm. *See* ECF 1 at ¶¶ 46–50. They allege that Defendant is failing to act by failing to remove the dam or to repair it to provide adequate fish passage. *See, e.g.*, *id*. at ¶¶ 56, 63.

Further, this Court finds Judge Brown's reasoning applicable even if the continuing violations doctrine does not apply. As Plaintiffs note, the text of the ESA forbids each take that occurs. ECF 1 at ¶¶ 46–51. And Plaintiffs seek only declaratory and injunctive relief in this case, rather than damages. *See* ECF 1 at 14–15 (prayer for relief); ECF 18 (order dismissing cause of action seeking civil penalties). When a plaintiff "seeks equitable relief for a single violation among many repetitive, discrete violations and does not seek damages [for time-barred injuries], the court does not need to invoke the continuing-violations doctrine." *Inst. for Wildlife Prot*., 2007 WL 4117978, at *6 (citing *Nat'l Parks Conservation Ass'n*, 480 F.3d at 416–17). This is because "repetitive discrete violations [ ] constitute independently actionable individual causes of action" that do not rely on the original violation as the "source of the plaintiff's present ability

to recover." *Nat'l Parks Conservation*, 480 F.3d at 417 (internal quotation marks, citations, and alterations omitted).

## CONCLUSION

For these reasons, Defendant's Motion to Dismiss, ECF 19, is DENIED.

**IT IS SO ORDERED**.

DATED this 22nd day of September, 2021.

/s/ Karin J. Immergut

Karin J. Immergut