KARL G. ANUTA (OSB #861423)
kga@integra.net
Law Office of Karl G. Anuta, P.C.
735 S.W. First Avenue, 2nd Floor
Portland, OR  97204
(503) 827-0320 | Phone
(503) 386-2168 | Fax
*Local Counsel for Plaintiffs*

JANETTE K. BRIMMER (WSB #41271)
*(Admitted pro hac vice)*
jbrimmer@earthjustice.org
MOLLY TACK-HOOPER (OSB #212147)
mtackhooper@earthjustice.org
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA  98104
(206) 343-7340 | Phone
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WATERWATCH OF OREGON, PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, INSTITUTE FOR FISHERIES RESOURCES, and STEAMBOATERS, | ) Case No. 3:20-cv-01927-IM ) ) ) FIRST AMENDED COMPLAINT FOR ) DECLARATORY AND ) INJUNCTIVE RELIEF |
| Plaintiffs, | ) ) |
| v. | ) ) |
| WINCHESTER WATER CONTROL DISTRICT, | ) ) ) |
| Defendant. | ) ) |

FIRST AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF  -1-

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

INTRODUCTION

1.        This citizen suit, brought under the Endangered Species Act ("ESA"), 16 U.S.C.

§ 1540(g), seeks to enjoin the Winchester Water Control District, to compel the District to

provide adequate fish passage at the Winchester Dam on the North Umpqua River in Oregon.

2.        Winchester Dam is owned and controlled by the Winchester Water Control

District.

3.        The Winchester Dam on the North Umpqua River is causing "take" of Oregon

Coast coho salmon ("Coast coho"), which are listed as threatened under the ESA, in violation of

Sections 4(d) and 9 of the ESA.  16 U.S.C. § 1533(d); 16 U.S.C. § 1538(a)(1)(B).  The Dam is

causing take of Coast coho by among other things: blocking adult salmon migration and access

to spawning habitat; harming or killing adult salmon in their efforts to traverse the dam to

migrate or spawn; harming or killing juvenile salmon by blocking safe out-migration from

spawning and rearing areas; harming or killing adult salmon by the dangerous state of the fish

ladder and dam itself such that salmon are physically battered, trapped, and/or stranded; and the

use of materials on and within the dam that include compounds toxic to salmon.

JURISDICTION AND VENUE

4.        This Court has jurisdiction over this action pursuant to the ESA citizen suit

provision, 16 U.S.C. § 1540(g).

5.        As required by 16 U.S.C. § 1540(g)(2)(A)(i), Plaintiffs, WaterWatch of Oregon,

Pacific Coast Federation of Fishermen's Associations, Institute for Fisheries Resources, and

Steamboaters, provided Defendant with notice of the violations described in this complaint by

letter dated April 6, 2020 and with an amended notice letter on July 13, 2020.  Plaintiffs sent

both notices to Defendant by regular first class and certified U.S. mail, return receipt requested,

and by electronic mail to the District's counsel, Mr. Dominic Carrollo.  Plaintiffs also provided a

AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF  - 2 -

copy of each notice to the Secretary of Commerce, to the National Oceanic and Atmospheric Association, and to the Oregon Department of Fish and Wildlife.  More than 60 days have passed since Defendant received both the original and amended notice and Defendant has not responded substantively to either notice.  This amendment to the complaint is in accordance with the stipulated schedule agreed to by the parties and entered by the Court.  *See* ECF 93.

6.      Venue in this District and Division is proper under 16 U.S.C. § 1540(g)(3)(A), 28 U.S.C. § 1391, and Local Rule 3-2(a)(3), because North Umpqua River and Winchester Dam are located in Douglas County, Oregon.

## PARTIES

7.      WaterWatch of Oregon ("WaterWatch") is a non-profit conservation organization dedicated since 1985 to the protection and restoration of streamflows in Oregon's rivers and streams in order to sustain native fish, wildlife, and aquatic ecosystems as well as the people and communities who depend on healthy rivers.  WaterWatch is incorporated and has its headquarters in the State of Oregon.  WaterWatch has worked for over 35 years in river basins around the State of Oregon to restore salmon and stream flows, including work to remove significant fish passage barriers such as dams.  WaterWatch has been instrumental in dam removal and flow improvement throughout the State, using voluntary agreements, education, and where necessary, litigation in order to protect rivers, their tributaries, and fish.  The North Umpqua River is an important salmon and steelhead river with 160 miles of high quality spawning habitat above the Winchester Dam, and of particular concern to WaterWatch are Coast coho salmon, listed as threatened under the ESA, and the impacts on Coast coho from habitat alteration, degradation, and barriers such as dams.  WaterWatch has approximately 1,000 members in Oregon.

AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF  - 3 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

8.      WaterWatch members participate in recreational activities such as hiking, backpacking, fishing, wildlife-viewing, and river and lake boating and kayaking throughout Oregon, including in and along the Umpqua River.  WaterWatch has standing based upon injuries to its members' interests caused by the Winchester Dam.

9.      Plaintiff Pacific Coast Federation of Fishermen's Associations ("PCFFA") is a coastwide trade organization of commercial fishing families that works to protect salmon and salmon habitat from pollution and migration barriers and to promote restoration where salmon habitat and health are degraded.  PCFFA's principal place of business is in San Francisco, California, and an active Northwest Regional Office is also located in Eugene, Oregon.  PCFFA is the largest organization of commercial fishing families on the west coast.  It consists of a federation of 17 smaller commercial fishermen's vessel owners' associations, trade associations, port associations, and marketing associations with membership throughout Washington, Oregon, and California.  PCFFA also has "at-large" members who are unaffiliated with any particular fishermen's association but have become individual members of PCFFA.  Collectively, PCFFA represents nearly 1,000 west coast commercial fishing family business operations.  Many of PCFFA's members derive all or part of their income from the harvesting of salmon in or near Oregon waters or salmon that originate in Oregon waters such as the North Umpqua River.

10.     Salmon originating from the North Umpqua River migrate, once they reach the ocean as juveniles, far south well into northern California waters and far north well into Washington waters, and throughout Oregon waters, where they are available as adults that intermingle in multiple ocean commercial fisheries in all three states.  And while there is no longer any directed commercial fishery on ESA-listed Coast coho, the abundance of Coast coho can and does restrict the ability of PCFFA's industry to harvest other, far more abundant salmon

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

species such as fall-run Chinook, under principles of "weak stock management" which govern all intermingling salmon fisheries on the west coast.  Under "weak stock management," which is required by both federal law and the scientific laws of sound conservation biology, it is the conservation needs of the *weakest* of several intermingling salmon stocks at sea that create the "quota cap" or legal limit on how many other fish of otherwise abundant stocks can be harvested. Since Coast coho are now so weakened in abundance that they have had to become ESA-listed, the low Coast coho abundances at sea act as a severe restriction *on all other ocean salmon fisheries*, often prematurely closing down these other fisheries in order to conserve weak stock Coastal coho.  Fewer Coastal coho surviving the impacts of Winchester Dam only exacerbate these already stringent allocation and ocean harvest restriction problems fishing families face up and down the coastline.

11.    PCFFA has standing through its port associations and individual members of those associations whose interests are harmed and whose livelihoods are adversely affected by the Winchester Dam's negative effects on salmon.

12.    Institute for Fisheries Resources ("IFR") is a California non-profit organization that works to protect and restore salmon populations and the human economies that depend on them by establishing alliances among fishing men and women, with government agencies, and with concerned citizens.  IFR advocates for reforms to protect salmon health and habitat throughout the U.S. West Coast and has successfully advocated for dam removals, improved pesticide controls, and enhanced marine and watershed conservation regulations throughout the West Coast in order to protect inland salmon spawning and rearing habitat.  IFR's principle place of business is in San Francisco, California, and IFR also maintains an active Northwest Regional Office in Eugene, Oregon.  Most of IFR's at least 850 financial contributors are commercial

AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF  - 5 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

fishermen.  IFR and PCFFA have common Board members, general membership, and staff; however, IFR is a separate organization that focuses on marine resources protection and salmon habitat conservation.

13.    IFR has standing through its members that are directly and indirectly injured by the Winchester Dam's negative effects on salmon runs.

14.    Plaintiff Steamboaters is a member-based Oregon non-profit organization based in Idleyld Park, Oregon, whose purpose and mission is to preserve, promote, and restore the natural production of wild fish populations in the North Umpqua River and its tributaries including the habitat for those fish populations, for present and future generations.  Steamboaters also actively work to preserve and protect the aesthetic values of the North Umpqua River and to preserve, educate, and promote the sport, ethics, and traditions of fly-fishing on the North Umpqua River.  Steamboaters has a current membership of approximately 290.

15.    Steamboaters has standing through its members who fish and recreate on and generally enjoy the North Umpqua River whose interests are harmed by the Winchester Dam.

16.    Defendant Winchester Water Control District ("WWCD") is a quasi-municipal corporation organized under the laws of Oregon, specifically ORS Chapter 553.  Defendant is the owner and operator of the Winchester Dam on the North Umpqua River in Oregon.

BACKGROUND

17.    Coast coho are listed as a threatened species under the Endangered Species Act. 50 C.F.R. 223.102.  Coast coho were first proposed for listing in July of 1995, 60 Fed. Reg. 38011 (July 25, 1995), and first listed as threatened in May of 1997.  62 Fed. Reg. 24588 (May 6, 1997).  The listing was reaffirmed in June of 2005.  70 Fed. Reg. 37160 (June 28, 2005).

18.    Coast coho salmon populations have overall declined precipitously over the past several decades.  Habitat degradation, including blocked or decreased access to habitat and

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

blocked or decreased ability to migrate to and from spawning grounds in tributary streams due to man-made or man-caused obstacles, has been a major factor in the decline.  In proposing to list Coast coho salmon as threatened under the ESA, the National Marine Fisheries Services ("NMFS") found that dams and the effects associated with dams such as sedimentation, loss of habitat connectivity, impairment of juvenile and adult migration, injury during migration, impairment of juvenile rearing, and increased stream temperatures were all factors contributing to the decline and supporting the listing of Coast coho salmon as threatened.

19.    The North Umpqua River's headwaters are in the Umpqua National Forest.  The River is a prized salmon and steelhead stream.  It joins with the South Umpqua a few miles below the Winchester Dam near Roseburg, Oregon and there flows to the ocean.  Below the dam, the North Umpqua River is popular for fishing, boating, and it is a drinking water source for the City of Roseburg and the Umpqua Basin Water Association.

20.    The North Umpqua River is habitat for a variety of anadromous fish, including Coast coho.  Areas of the North Umpqua River above the Winchester Dam and its reservoir are prime salmon and steelhead habitat, with up to 160 miles of high-quality habitat above the dam.

21.    In its 2014 Final Recovery Plan for Coast coho, NMFS identifies barriers such as dams as having a highly negative impact on Coast coho recovery.

22.    The North Umpqua River is critical habitat for Coast coho salmon, including the river surrounding Winchester Dam.

23.    Winchester Dam is approximately 17 feet tall and 450 feet wide, completely spanning the North Umpqua River.  It was constructed in 1890 as a wood crib dam achieving an original head of seven feet to drive a turbine intended to power industries the owners hoped to attract to the dam site.  Since its original construction, the dam was raised through various

AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF  - 7 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

additions to approximately 17 feet. Over its history, the dam has experienced significant

structural damage from fire, flood, erosion, and decay, and has undergone a number of

ownership changes, as well as major structural repair, replacement, and additions using various

materials. The result is the patchwork dam structure of today. The current dam consists of a

primarily wood and metal central crib structure of approximately 365 feet in width extending

between two primarily concrete abutments on each river bank. The central crib span is filled

primarily with gravel, old railroad ties, and other materials, and attached to the river bed with a

combination of tie rods and a concrete footing. The dam's exceptionally old and porous

patchwork structure is uniquely susceptible to through-structure erosion and leaks. These

characteristics also make Winchester Dam uniquely harmful to native migratory fish.

     24.    Winchester Dam's power-generating facilities were severely damaged by the

Christmas Flood of 1964. In April 1969, Pacific Power & Light Company transferred its

ownership of the Winchester Dam and associated property to the present owner, the Winchester

Water Control District, formed by area property owners to convert the dam reservoir for

recreational uses. Currently, the dam serves no hydropower, flood control, or water supply

function and is maintained solely to provide private flatwater recreation for the surrounding

homeowners. Under Oregon law (ORS 537.130; ORS 537.400–407), a person may not construct

a dam or other obstruction for water diversion or storage without first applying for and receiving

a valid water right. WWCD has no valid water right for water storage for the reservoir.

Historical records show no storage or reservoir rights ever issued for Winchester Dam, though

the dam does store water. Two water right claims, one with a priority date of 1890, the other

with a priority date of 1908, both for recreational use of water, were filed by Defendant in 1992,

over a century after the dam's original construction for power generation. These claims have

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

never been adjudicated.  On January 13, 2023, the Oregon Water Resources Department

("OWRD") informed WWCD that it was storing 91 acre-feet more water than stated in these

claims and directed WWCD to come into compliance by either lowering the reservoir pool by

1.5 feet or by applying for a new water right for the additional 91 acre-feet.  Instead, on May 1,

2023, WWCD wrote a letter to OWRD requesting to amend WWCD's combined water rights

claims from 300 acre-feet to 400 acre-feet.  On August 10, 2023, OWRD denied WWCD's

request, noting that the requested amendment was untimely and was not based on any of the

statutory grounds for amending a water rights claim.

25.     The Winchester Dam is a passage impediment and hazard for migrating adult and

juvenile Coast coho and other salmon and steelhead on the North Umpqua.

26.     In 1945 a fish ladder was added to the north side of the dam with upgrades in

1964 and the early 1980s.

27.     The fish ladder is a concrete, metal, and wood structure designed primarily as a

pool and weir design with distinct steps in the water surface elevation.  There is a high flow

entrance to the ladder and a low flow entrance.  The low flow entrance is the primary entrance

during most of the year.

28.     The top of the fish ladder opens into a low-velocity area of the reservoir

immediately upstream of the dam crest.

29.     The fish ladder does not meet the criteria, rationale, and guidelines for design of

adequate safe, timely, and efficient fish passage published by NMFS and as set forth in Oregon

Department of Fish and Wildlife ("ODFW") Oregon Administrative Rules (OAR), Section 635-

412-005 *et seq.*, particularly OAR 635-412-0035.

AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF  - 9 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

30.    The fish ladder fails to meet criteria and requirements for fish passage flows, design geometry, and energy dissipation factor, among others.

31.    The dam and fish ladder also fail to meet criteria and requirements due to numerous false attraction flows attributable to both the design of the ladder and dam and leakage through the face of the dam.

32.    The placement of the fish ladder on the far north side of the dam near bedrock in the river makes it difficult for fish to find.  That placement also results in injury to fish from falling to the bedrock, when attempting to navigate the inadequate ladder.

33.    There is no dedicated downstream fish passage for juveniles, meaning that they either must somehow find the fish ladder or they must go over the top of the dam.  Juveniles going over the face of the dam near or at the location of the bedrock are likely to be injured on the bedrock below.

34.    The inadequate design and placement of the fish ladder and the false attraction flows at the dam face causes delay, harm, injury, and stress that adversely affect spawning and migration in Coast coho salmon.

35.    Winchester Dam and the ladder are also in a state of disrepair and in further deteriorating condition.  The dam has consistently experienced significant leakage through the dam structure itself, particularly through the wooden crib and from under the south abutment of the dam.  The disrepair contributes to and exacerbates the inadequacy and harmful effects of the fish ladder and Winchester Dam on Coast coho salmon.

36.    ODFW has noted that Winchester Dam's current condition significantly hinders upstream passage for Coast coho salmon and the fish ladder does not meet current criteria for jump heights, water velocities, or attraction flows.  As a result, ODFW has also noted that

AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF  - 10 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

upstream adult passage at Winchester Dam is only possible under certain specific ideal flow conditions.

37.    Materials used in repairs or updates to the fish ladder and dam appear to include materials or chemical compounds such as those found in treated wood that are hazardous to salmon, including Coast coho salmon.

38.    Previous attempts to repair the deteriorating Winchester Dam and ladder have themselves harmed Coast coho salmon.  For example, in 2018, ODFW documented a fish kill resulting from attempts to repair a large hole under the dam.  NMFS subsequently informed ODFW that based in the information ODFW collected, harm to Coast coho salmon could be assumed.  The Oregon Department of Environmental Quality ("DEQ") then investigated and determined that the Defendant's repairs—which took place during Coast coho salmon migration—violated state water quality standards and caused pollution, killing fish and other aquatic species.  DEQ issued a civil penalty in connection with the repairs, because the North Umpqua River is important habitat for threatened Oregon Coast coho salmon and several other sensitive species.

39.    Beginning on August 7, 2023, WWCD began repairs on the dam which WWCD claimed to state dam safety officials would be "to the minimum extent necessary to eliminate known and reasonably anticipated dam safety deficiencies at the dam."  Because WWCD failed to complete repairs during the in-water work window, it requested an extension.  Noting that the repair work was negatively affecting ESA listed Coho salmon and other native migratory fish species by leaving them without adequate fish passage and causing them stress and energy expenditure as well as at "high potential" risk for physical injury, ODFW conditionally extended the work window through September 6, 2023 solely to ensure that there was no further harm to

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

fish.  The repair work did not include any changes to the fish ladder, wholly failed to address the upwelling from the south abutment of the dam, and failed to cure all of the false attraction flows caused by the dam.  In fact, by installing protruding steel tie rods, metal I-beams, and metal flanges over the face of the dam and extending a concrete apron at the foot the dam, the repairs created several new hazards for fish jumping at the curtain of water flowing over and/or through the dam.

40.    Oregon's fish passage statutes, ORS 509.585(2) & ORS 509.610(3), require that Defendant remove the obstruction or provide adequate fish passage over Winchester Dam.

41.    In 2019, ODFW updated its list of priorities for fish barriers that are a problem and need improvement.  ODFW identified the Winchester Dam on North Umpqua River as a barrier and hazard for fish, such as listed Coast coho, and identified Winchester Dam as a "Group 1" priority, placing it as the second highest priority privately-owned barrier statewide for enforcement actions based on the needs of native migratory fish.

42.    The Winchester Dam is causing take of Coast coho by one or more of the following:

- blocking and/or delaying adult salmon migration and access to spawning habitat;

- harming or killing adult salmon in their efforts to traverse the dam to migrate or spawn;

- harming or killing juvenile salmon by blocking and/or delaying out-migration from spawning and rearing areas;

- harming or killing adult salmon by the state of disrepair of the fish ladder and/or the dam itself such that salmon are physically battered, impaled or injured on parts of the dam and ladder; and

AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF  - 12 -

- harming or killing adult salmon through the disrepair of the fish ladder including the use of materials on the ladder that include compounds toxic to salmon.

43.     Douglas County property records show the Winchester Dam is owned, operated, and controlled by Defendant.

CAUSES OF ACTION

COUNT I (Take Of Listed Species)

44.     Plaintiffs restate and reallege all preceding paragraphs.

45.     The ESA prohibits any person from "taking" an endangered species.  16 U.S.C. § 1538(a)(1)(B).  The ESA defines "take" as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect or attempt to engage in any such conduct."  16 U.S.C. § 1532(19).

46.     By regulation, NMFS has defined "harm" to include:

Significant habitat modification or degradation which actually kills or injures fish or wildlife by significantly impairing essential behavioral patterns, including breeding, spawning, rearing, migrating, feeding or sheltering.

50 C.F.R. § 222.102.  "Harassment" includes unintentional acts that make it more difficult for an endangered species to breed, feed, shelter, reproduce or raise its offspring.  H.R. Rep. No. 412, 93rd Cong. 1st Sess. at 11 (1973); 50 C.F.R. § 17.3.

47.     NMFS has also determined that its definition of "harm" is consistent with the definition of "harm" in regulations promulgated by the U.S. Fish and Wildlife Service which definition includes failure to act where a person has a duty to do so in order to avoid or prevent the harm.

48.     Under Section 4(d) of the ESA, 16 U.S.C. § 1533(d), NMFS has the authority to issue regulations extending the take prohibition to threatened species.  NMFS has adopted a regulation pursuant to Section 4(d) making the take prohibition applicable to Coast coho salmon.

AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF  - 13 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

50 C.F.R. § 223.203.  Under 16 U.S.C. § 1538(a)(1)(G), it is unlawful to take threatened Coast coho salmon in violation of the Section 4(d) regulation.

49.     NMFS regulations define "harm" that is a take of listed species to include significant habitat modification or degradation which actually kills or injures fish or wildlife by significantly impairing essential behavioral patterns, including, breeding, spawning, rearing, migrating, feeding or sheltering.  50 C.F.R. § 222.102.

50.     The ESA take prohibition applies to all "persons."  16 U.S.C. § 1538(a)(1).  The ESA defines a "person" to include an individual, corporation, partnership, trust, association or any other private entity.  16 U.S.C. § 1532(13).  Defendant in this case is a "person" as defined by the ESA.

51.     The ESA citizen suit provision authorizes suits to enforce the ESA and its implementing regulations against any person who is alleged to be in violation of any provision of the ESA or regulations implementing the ESA.  16 U.S.C. § 1540(g).

52.     Defendant, as the owner of Winchester Dam, has violated and continues to violate the take prohibitions in Section 9 of the ESA by failing to remove the dam or provide adequate fish passage at the dam as required by Oregon law, which failure has caused and continues to cause harm, harassment, injury and death to Coast coho salmon.

53.     Oregon's fish passage statute requires that Defendant remove or provide adequate fish passage over Winchester Dam.  *See* ORS 509.585(2) ("a person owning or operating an artificial obstruction may not construct or maintain any artificial obstruction across any waters of this state that are inhabited . . .by native migratory fish without providing passage for native migratory fish"); and ORS 509.610(3) ("A person owning or operating an artificial obstruction is

AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF  - 14 -

responsible for maintaining, monitoring, and evaluating the effectiveness of fish passage or alternatives to fish passage").

54.    Defendant's failure to either provide adequate fish passage or to remove Winchester Dam is the proximate cause of unlawful take of Coast coho.

55.    Defendant is liable for the unlawful take of Coast coho salmon in North Umpqua River and Plaintiffs are entitled to an Order enjoining Defendant from continued take of Coast coho salmon, requiring either removal of the dam or provision of adequate fish passage with repairs to the dam adequate to end and prevent ongoing harm to fish.

56.    Plaintiffs are entitled to recovery of their attorney fees and litigation expenses for preparing and bringing this litigation, pursuant to 16 U.S.C. § 1540(g)(4).

REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request an order from this Court:

A.    Declaring that Defendant has violated the salmon 4(d) rule, 50 C.F.R. § 223.203 and the Endangered Species Act, 16 U.S.C. § 1538(a)(1)(G), and 1538(1)(B) by failing to provide adequate fish passage at the Winchester Dam and/or by failing to remove the Winchester Dam;

B.    Enjoining Defendant from continuing to maintain the Winchester Dam in a manner that violates Section 9 of the Endangered Species Act, 16 U.S.C. § 1538(a)(1)(G), and 1538(1)(B), because of Defendant's failure to provide adequate fish passage and requiring either removal of Winchester Dam or construction of adequate fish passage as defined by the most recent NMFS and ODFW criteria and the best commercially available fish passage science and engineering criteria with repairs to the dam adequate to end and prevent ongoing harm to fish, within 6 months of the court's order;

AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF  - 15 -

C.      Awarding Plaintiffs their costs and attorneys' fees pursuant to 16 U.S.C.

§ 1540(g)(4); and

D.      Granting such other and further relief as the Court deems just and equitable.

Respectfully submitted this 15th day of September, 2023.

<div style="margin-left:40%">

*s/ Karl G. Anuta*_____ _
KARL G. ANUTA (OSB #861423)
kga@integra.net
Law Office of Karl G. Anuta, P.C.
735 S.W. First Avenue, 2nd Floor
Portland, Oregon  97204
(503) 827-0320 | Phone
(503) 386-2168  | Fax

*Local Counsel for Plaintiffs*


JANETTE K. BRIMMER (WSB #41271)
jbrimmer@earthjustice.org
*(Admitted Pro Hac Vice)*
MOLLY TACK-HOOPER (OSB #212147)
mtackhooper@earthjustice.org
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA  98104
(206) 343-7340 | Phone

*Attorneys for Plaintiffs*

</div>

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*